**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

SECURITIES AND EXCHANGE COMMISSION,  )
                                                      )
                  Applicant,  )
                                                      )
      v.  )                  Case No. 17-cv-3430
                                                      )
CARL M. BIRKELBACH and WILLIAM J.  )
MURPHY,  )
                                                      )
            Respondents.  )

**APPLICATION FOR AN ORDER UNDER SECTION 21(e)(1)
OF THE EXCHANGE ACT DIRECTING COMPLIANCE WITH
<u>AN ORDER OF THE SECURITIES AND EXCHANGE COMMISSION</u>**

**INTRODUCTION**

Section 21(e)(1) of the Securities Exchange Act of 1934[1] ("Exchange Act") permits a district court to issue an order commanding compliance with an order of the Securities and Exchange Commission ("SEC" or "Commission"). In a July 2013 decision, the SEC held that William J. Murphy, a securities representative and securities principal at Birkelbach Investment Securities, Inc. ("BIS"), had violated federal securities laws and rules of the Financial Industry Regulatory Authority ("FINRA") when, among other things, Murphy engaged in discretionary trading without written authorization; traded beyond approved levels in customer accounts; made unsuitable and excessive trades; and churned customer accounts. In the same decision, the SEC also found that Carl M. Birkelbach, the founder and president of BIS, had violated FINRA's rules by failing to supervise Murphy. Based on these violations, the SEC ordered that Murphy pay $585,174.67 in disgorgement to FINRA, and that Murphy and Birkelbach pay, jointly and severally, $9,503.17 in hearing costs and $3,510.80 in appeal costs to FINRA. Murphy and

---

1. 15 U.S.C. § 78u(e)(1).

Birkelbach did not appeal the SEC's order regarding the disgorgement amount and costs. Thus, the SEC's order is final.

To date, neither Murphy nor Birkelbach has made any payment to FINRA. The SEC respectfully moves this Court to order Murphy to pay the disgorgement amount and to order Murphy and Birkelbach to pay the hearing and appeal costs in full.

## JURISDICTION AND VENUE

This Court has jurisdiction under Section 21(e)(1) of the Exchange Act.  15 U.S.C. § 78u(e)(1).  Venue properly lies in the Northern District of Illinois under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims asserted herein occurred in this district. Among other things, Murphy engaged in, and Birkelbach oversaw, a substantial number of securities transactions involving the relevant customer accounts at offices located within the Northern District of Illinois. Further, both respondents reside in this district. Upon information and belief, Murphy resides at 14420 Long Ave., Midlothian, Illinois 60445, and Birkelbach resides at 330 South Michigan Ave., Apt. 1712, Chicago, Illinois 60604.

## MURPHY'S AND BIRKELBACH'S VIOLATIONS

This application arises from Murphy's and Birkelbach's misconduct from July 2002 to April 2007 involving the BIS accounts of Amy Lowry and Benjamin Martinelli.[2]

In October 2001, Lowry opened an account at BIS to generate income on stock valued at around $1.5 million. Under the agreed-upon trading strategy,[3] her account's value grew to

---

2. *See In the Matter of the Application of William J. Murphy and Carl M. Birkelbach for Review of Disciplinary Action Taken by FINRA*, Exchange Act Release No. 69923, 2013 WL 3327752, at *1 (July 2, 2013) (the "2013 SEC Opinion and Order") (attached as Ex. 1); *see also FINRA v. Murphy*, Complaint No. 2005003610701, 2011 WL 5056463, at *2 (FINRA Oct. 20, 2011) (the "2011 FINRA Decision") (attached as Ex. 2).

3. The specific trading strategy used is known as a covered call strategy of options trading, which allowed Lowry to trade options while still owning the underlying stock. 2013 SEC Opinion and Order at *2 & n.2.

approximately $1.7 million with no margin debt. In July 2002, Murphy took over her account.[4]

He greatly increased trading in her account and repeatedly made unauthorized transactions that

did not follow the agreed-upon strategy.[5] To avoid detection, he provided Lowry with inaccurate

account statements.[6] Even after Lowry confronted him, he continued to trade heavily in her

account through December 2005. Around that time, FINRA—which was investigating

Murphy—contacted Lowry regarding Murphy's handling of her account. By April 2006, when

Lowry closed her BIS account, Murphy's improper trading had cost her $871,301.95 in trading

losses while generating $1,002,100 in commissions.[7]

In April 2007, Birkelbach assigned Martinelli's existing BIS account to Murphy.

Murphy's unauthorized trades in Martinelli's account in April and May 2007 alone decreased the

account's value by 45 percent.[8] Martinelli later closed his BIS account and filed formal

complaints with FINRA and the Illinois Securities Department.[9]

Birkelbach was responsible for supervising Murphy, approving trades, and reviewing

account statements. He did not deny Murphy's trades in either account.[10]

After a FINRA hearing panel sanctioned them for multiple violations, Murphy,

Birkelbach, and BIS appealed the decision to FINRA's National Adjudicatory Counsel ("NAC").

---

4. At that time, Lowry reiterated the investment strategy with Birkelbach and did not authorize discretionary trading. *Id.* at *3.

5. In total, Murphy entered into 2,594 options trades involving more than 67,000 stock options contracts over roughly three-and-a-half years. *Id.*

6. For example, a majority of the statements Lowry received included overstatements of the account's total profits, ranging from a few hundred dollars to over $38,000. *Id.* at *4.

7. *Id.* at *4-5.

8. *Id.* at *6.

9. *Id.*

10. *Id.* at *6-7.

The NAC affirmed the hearing panel's findings, but slightly modified the monetary sanctions.[11]

Murphy and Birkelbach then appealed to the Commission. The Commission affirmed FINRA's determinations, finding that: (i) Murphy had, among other things, engaged in unauthorized discretionary trading, entered into transactions not suitable for Lowry and excessively traded and artificially generated commissions;[12] and (ii) Birkelbach had failed to reasonably supervise Murphy.[13] The Commission therefore issued its Order, which sustained the $585,174.67 disgorgement order against Murphy and the order requiring Murphy and Birkelbach to pay, jointly and severally, the hearing and appeal costs.[14]

To date, neither Murphy nor Birkelbach has made any payment to FINRA.[15]

## ARGUMENT

### A.    This Court Has Jurisdiction to Enforce a Final SEC Order.

Section 21(e) of the Exchange Act expressly gives United States district courts jurisdiction to enforce SEC orders: "Upon application of the [SEC], the district courts of the United States . . . shall have jurisdiction to issue . . . orders commanding (1) any person to comply with . . . orders" issued under the Exchange Act.[16] Here, the SEC invokes Section 21(e)(1) because Murphy and Birkelbach have refused to comply with the SEC order voluntarily.

---

11. *Id.* at \*7; 2011 FINRA Decision at \*37.

12. 2013 SEC Opinion and Order at \*8-18.

13. *Id.* at \*18-22. The Commission noted, among other things, that Birkelbach had failed to change his supervisory approach despite numerous red flags, including reported concerns about Murphy's trading and the FINRA investigation. *Id.* at \*20-21.

14. *Id.* at \*23-30. Birkelbach did petition the U.S. Court of Appeals for the Seventh Circuit to review the SEC's order—but only as to the lifetime bar from working in the securities industry. *See Birkelbach v. SEC*, 751 F.3d 472, 474 (7th Cir. 2014). The Seventh Circuit denied his petition. *Id.* at 482.

15. Declaration of Chantel Wright, Billing Lead in the Finance Department at FINRA, dated Feb. 22, 2017 (attached as Ex. 3).

16. 15 U.S.C. § 78u(e); *accord SEC v. Vittor*, 323 F.3d 930, 934-35 (11th Cir. 2003); *SEC v. McCarthy*, 322 F.3d 650, 654-55 (9th Cir. 2003); *SEC v. Pinchas*, 421 F. Supp. 2d 781, 783 (S.D.N.Y. 2006).

Therefore, a court judgment is needed to make them comply.

Under Section 21(e)(1), only the SEC can apply to this Court for an order enforcing an

SEC order.[17] But an interested non-party may enforce this Court's order under Federal Rule of

Civil Procedure 71.[18] Thus, FINRA may collect the unpaid disgorgement amount and costs by

using this Court's Order commanding Murphy and Birkelbach to comply with the SEC order.[19]

**B.      Summary Proceedings Are Appropriate Here Because the Liabilities
of Murphy and Birkelbach Are Fixed.**

Section 21(e)(1) authorizes the use of summary proceedings to enforce SEC orders in

district courts.[20] The proceedings "may be 'conducted without formal pleadings, on short notice,

without summons and complaints, [and] generally on affidavits.'"[21] Thus, the SEC appropriately

proceeds here by filing this Application without first having filed a summons and complaint.

Because Murphy and Birkelbach did not exercise their right to further appeal their

---

17. *See Vittor*, 323 F.3d at 935 (noting that Section 21(e)(1) "'names the SEC as the only authorized applicant for judicial enforcement of SEC orders'" (quoting *Lang v. French*, 154 F.3d 217, 223 (5th Cir. 1998)).

18. Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."); *accord Berger v. Heckler*, 771 F.2d 1556, 1565 (2nd Cir. 1985) ("Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action . . . .") (internal quotation marks and citation omitted); 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3032 (2nd ed. 1997).

19. *See SEC v. Mohn*, 465 F.3d 647, 653 (6th Cir. 2006) (explaining that—for purposes of a 21(e) application—Rule 71 allowed a third-party (FINRA's precursor) to use the court's order to collect a fine that the defendant was unwilling to pay voluntarily); *accord Floyd v. Ortiz*, 300 F.3d 1223, 1226-27 (10th Cir. 2002) (relying on Rule 71 to hold that the inmate who was not a party to the original settlement agreement, but for whose benefit settlement agreement was entered, could seek enforcement of its terms); *U.S. v. Hackett*, 123 F. Supp. 104, 105 (W.D. Mo. 1954) (permitting tenants on behalf of whom the United States obtained a judgment for treble the amount of excessive rents paid to the defendant to obtain execution of the judgment under Rule 71).

20. *See McCarthy*, 322 F.3d at 659 ("[W]e hold that [Section] 21(e) of the Exchange Act authorizes the use of summary proceedings to enforce Commission orders in district court."); *Pinchas*, 421 F. Supp. 2d at 783 (recognizing the use of summary proceedings); *cf. SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979) (interpreting similar language in a provision of the Securities Act of 1933 in order to authorize summary proceedings).

21. *McCarthy*, 322 F.3d at 655 (quoting *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 406 (1960)).

liabilities,[22] their liabilities are fixed and determined by the SEC order and cannot be disputed.[23]

Therefore, summary entry of a judgment enforcing their liability is proper, provided that Murphy

and Birkelbach are given an opportunity to respond to the SEC's Application.[24] The SEC will

serve both Murphy and Birkelbach with a copy of this Application. The SEC will then file proofs

of service with this Court, after which it will ask the Court to establish a briefing schedule so that

Murphy and Birkelbach have an opportunity to respond.

## CONCLUSION

After the SEC has served Murphy and Birkelbach, and they have been given an

opportunity to respond, the SEC respectfully requests that this Court enter an Order that:

(1)     Commands Murphy to comply with the 2013 SEC Opinion and Order in its

entirety and to pay FINRA (i) disgorgement of $585,174.67, and (ii) jointly and severally with

Birkelbach, hearing costs of $9,503.17 and appeal costs of $3,510.80;

(2)     Commands Birkelbach to comply with the 2013 SEC Opinion and Order in its

entirety and to pay FINRA, jointly and severally with Murphy, the hearing costs of $9,503.17

and appeal costs of $3,510.80;

(3)     Provides further necessary and appropriate relief to compel Murphy and

Birkelbach to comply with the 2013 SEC Opinion and Order; and,

(4)     Maintains this Court's jurisdiction over this matter as necessary to ensure that

Murphy and Birkelbach comply with the Court's Order.

---

22. As previously noted, Birkelbach petitioned only the Seventh Circuit to review the SEC's decision to impose a lifetime bar from participation in the securities industry—which the court denied. *Birkelbach*, 751 F.3d at 474.

23. *See Pinchas*, 421 F. Supp. 2d at 783 (holding that arguments contesting the underlying NASD fine or SEC affirmance thereof are not germane to an adjudication of a Section 21(e) application).

24. *See McCarthy*, 322 F.3d at 659-660 (stating that due process requires that opposing party be given opportunity to respond to the SEC's Section 21(e) application).

May 8, 2017                               Respectfully submitted,


                                          /s/ Benjamin Hanauer
                                          Benjamin J. Hanauer (Ill. Bar # 6280156)
                                          Securities and Exchange Commission
                                          Chicago Regional Office
                                          Securities and Exchange Commission
                                          175 W. Jackson Blvd., Suite 1450
                                          Chicago, IL 60604
                                          Phone:  (312) 353-8642
                                          Facsimile:  (312) 353-7398
                                          hanauerb@sec.gov



                                          Daniel S. Jacobs[*]
                                          Securities and Exchange Commission
                                          100 F Street N.E., Mail Stop 9612/SP1
                                          Washington, D.C. 20549
                                          Tel:  (202) 551-2910
                                          Facsimile:  (202) 772-9263
                                          jacobsd@sec.gov

                                          *Member of the Bar of the State of
                                          Maryland.   Motion to Appear Pro Hac Vice
                                          is forthcoming.